LAW OFFICES OF

# JOEL B. RUDIN

200 WEST 57TH STREET

SUITE 900

NEW YORK, NEW YORK 10019

———

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@aol.com

JOEL B. RUDIN
———
BENJAMIN C. FISHMAN*
ANNE E. ZERBE*
*ADMISSION PENDING

May 29, 2007

## By ECF and Facsimile

Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    Su v. City of New York
>        06 Civ. 687 (RJD) (CLP)

Dear Judge Pollak:

I am writing with a status update in anticipation of our conference with your Honor on June 1, 2007, at 11 a.m. In a nutshell, the parties have not resolved differences over discovery, defendant has provided virtually no document discovery, and judicial intervention appears necessary to get things back on track.

This is a civil rights action alleging that unlawful managerial policies and practices of the Queens District Attorney, as policymaker for defendant City of New York, caused *Brady* material to be withheld at plaintiff's attempted murder trial and the jury to be misled, which resulted in his wrongful conviction and nearly 12 years of wrongful incarceration.

Plaintiff's interrogatories and document requests were served on defendant on July 17, 2006. The Court's original deadline for compliance was September 15, 2006, which was extended on consent to October 6, and then continued to November 17 for "written response to discovery and all documents ..." However, defendant objected to virtually every request for interrogatories and documents and provided documents responsive to just two of

defendant's 19 requests.[1]

After plaintiff's informal efforts to obtain compliance failed, on January 19, 2007, the undersigned faxed a letter to the Court (copy attached) detailing the differences between the parties and requesting a conference. However, defense counsel then asked me not to file this document pursuant to ECF, which I had neglected to do, because he wanted to discuss voluntary compliance further. Thereafter, we had several lengthy telephone conversations, during which defense counsel asked for more time to consult with other City officials about what, if any, disclosure to provide. Then defense counsel suffered a serious knee injury, requiring surgery, which delayed our efforts two more months. Finally, we had additional conversations during the past two weeks, which resulted in some agreement in theory, but also still another request for more time and no actual disclosure. As the conference date approaches, plaintiff still has not received any more documents, while many of the requests are still up in the air.

The two principle differences between the parties involve (1) the relevant time period for which documents should be disclosed, and (2) whether documents involving possible prosecutorial misconduct, and the disciplining or failure to discipline publicly-employed prosecutors who arguably engaged in such misconduct, should be disclosed subject to a confidentiality order.

Plaintiff seeks disclosure of Queens D.A. training and disciplinary records through 2003, which is the year that plaintiff's criminal case finally was dismissed. The complaint alleges that plaintiff was wrongfully imprisoned due to the unlawful policies and practices of the D.A.'s Office to withhold exculpatory evidence, including after trial, and to fail to correct and remedy the harm caused by such misconduct, *see* Complaint, ¶ 78(a)(iii), through summer 2003. In addition, as discussed in my letter to the Court dated January 19, 2007, at page 3 and n.1, it is well-established in § 1983 actions that subsequent actions are relevant to show prior municipal policy. Nevertheless, the City's position is that only such records through the date of plaintiff's conviction, February 25, 1992, need be disclosed.

---

[1]Meanwhile, plaintiff responded to defendant's request for any documents in plaintiff's trial attorney's file concerning plaintiff's knowledge of the undisclosed cooperation agreement between a prosecution witness, Jeffrey Tom, and the Queens D.A. (there are no such documents).

As for the purported privacy of prosecutors' records, defendant cannot show good cause for a protective order with respect to misconduct by publicly-paid prosecutors in the performance of their prosecutorial duties. The public has the right to know about such misconduct in the vital function of prosecuting criminal cases and potentially convicting the innocent. This issue is discussed at pp. 2-3 of my January 19 letter. An additional, recent case on this subject is Magistrate Judge Francis' decision in *Schiller v. City of New York*, 2007 WL 1299660 (S.D.N.Y., May 4, 2007). On the other hand, plaintiff concedes that truly personal information not having to do with the performance of a prosecutor's duties should be kept confidential.

### Interrogatories

As I understand defendant's agreement, it will answer Interrogatories 1 through 3, by particularizing defendant's affirmative defenses, and number 7, identifying instances in which Queens A.D.A.s have been disciplined.

As for Interrogatories 5 and 6, which request the identity of supervisors who were responsible, from 1986 through the present, for training and disciplining A.D.A.s, the City will respond through the date of plaintiff's conviction on February 25, 1992, but has reserved its position for the subsequent period. Plaintiff believes such discovery is essential for the reasons outlined above.

### Document Requests

Defendant has agreed to provide documents responsive to Request Nos. 4, 5, 6 and 7, seeking certain possibly sealed police, court, or district attorney records, upon the Court's signing of a suitable unsealing order, which we will have with us at the conference.

As to Request No. 8, defendant has agreed to provide hiring, training, personnel and disciplinary records as to former A.D.A. Linda Rosero (plaintiff's trial prosecutor), upon the execution of a confidentiality order. Plaintiff agrees to a confidentiality order except as to records relating to disciplining (or failing to discipline) Ms. Rosero. Plaintiff has agreed to defer seeking such records as to certain other prosecutors involved in his case pending determination, during depositions, of their relevancy.

Regarding Document Request No. 10, which seeks certain training-related documents

of the Queens D.A. from January 1, 1987, through December 31, 2003, defendant has refused to agree to turn over any materials subsequent to February 25, 1992. In addition, defendant has refused to disclose, for *any* time period, training documents for the investigation and disciplining of prosecutors suspected of violating professional or ethical obligations generally, or for supervising trial prosecutors in detecting and deciding when to disclose *Brady/Giglio* material. *See* Request 10, ¶¶ (d) and (e).

Request No. 11 seeks personnel and disciplinary records for prosecutors who were the subject of allegations of prosecutorial misconduct for wrongfully withholding evidence or misleading the court, defense or jury, between January 1, 1986, through December 31, 2005. The defense has agreed to comply only for the period before February 25, 1992, but only if plaintiff agrees to a confidentiality order, which plaintiff does not, for the reasons discussed above and in my letter of January 19, pp. 2-3.

Request No. 12 seeks records identifying the prosecutors involved in some 85 identified cases of prosecutorial misconduct, as well as training, personnel, evaluation and disciplinary records for such prosecutors. Defendant has agreed only to disclose such records for the pre-February 25, 1992 period, and only pursuant to a confidentiality order. Plaintiff wants disclosure of records for the subsequent period, for the aforementioned reasons, and declines to agree to a confidentiality order for records dealing with the inadequate performance of public prosecutors in connection with their responsibility to ethically prosecute criminal cases.

Defendant will comply with Request Nos. 13, 14 and 15, except for the post-February 25, 1992 period. Request No. 13 involves records of correspondence by D.A. Brown to departmental disciplinary committees concerning misconduct by prosecutors; Nos. 14 and 15 concern other civil lawsuits for prosecutorial misconduct by Queens A.D.A.s.

Defendant will comply with Requests 16 through 18, to the extent it has possession or control of such documents dealing with annual reports of the Queens D.A. and budget requests. It also will disclose any of plaintiff's inmate records it obtains (No. 19).

All other requests have been resolved by the parties.

In addition to resolving the remaining disagreements between the parties, the Court needs to set a new deadline for the City to disclose the documents, so that depositions may

be scheduled thereafter.

I thank the Court for its consideration.

Respectfully submitted,

Joel B. Rudin

JBR/tp
Encl.

cc:     John Graziadei, Esq.  (by fax) (w/encl.)
        Assistant Corporation Counsel
        *Attorney for Defendant*

LAW OFFICES OF

# JOEL B. RUDIN

200 WEST 57TH STREET

SUITE 900

NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@aol.com

January 19, 2007

**FACSIMILE**

Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Su v. City of New York
            06 Civ. 687 (RJD) (CLP)

Dear Judge Pollak:

    I am writing to advise the court of serious differences between the opposing parties regarding discovery and to respond to defendant's letter of January 16, 2007.

### Defendant's Failure to Comply With Discovery Demands

    Defendant has provided virtually nothing requested by plaintiff in his interrogatory and document demands. The parties fundamentally disagree about such requests, and judicial intervention appears necessary to resolve the issues raised.

### Interrogatories

    Regarding interrogatories 1, 2 and 3, defendant refuses to state the basis for its affirmative defenses that plaintiff fails to state a valid claim and caused his own injury through his own "culpable or negligent conduct." Plaintiff is entitled to this information to guide him in discovery and to determine whether there is any factual or legal basis for defendant's vague claims.

    Defendant refuses to disclose the identity of officials at the Queens D.A.'s Office who

had responsibility for training (no. 5) or discipline (no. 6), or to disclose whether any ADAs have been disciplined other than in writing for misconduct similar to that alleged in this case (no. 7), contending "there is a more practical method of obtaining the information sought" without revealing what that is. Defendant objects that plaintiff's specific and clear requests are "vague, ambiguous, overbroad" without explaining how this is so.

## Document Demand

Defendant has provided documents in response to just two of plaintiff's 19 requests, consisting of police reports (request no. 1) and limited D.A.'s training materials (request no. 10). It otherwise has refused to provide obviously relevant materials, either by lodging specious, unexplained and boilerplate vagueness or overbreadth objections, insisting upon an unwarranted confidentiality stipulation, unjustifiably asserting third parties' privacy "rights," or lodging a specious relevancy objection to any materials created after the date of plaintiff's criminal conviction in 1992. The court should compel defendant to comply with its discovery obligations.

First, defendant claims that the production of law enforcement records from the NYPD or the D.A.'s office, as well as personnel records of public prosecutors whom judicial decisions or meritorious lawsuits have implicated in misconduct, may be withheld absent a protective order. We strongly disagree. In general, a defendant must make a showing of good cause to restrict access to such records. *See In re "Agent Orange" Product Liability Action*, 821 F.2d 139, 145-147 (2d Cir. 1987). In the context of § 1983 actions, in the leading decision, *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988), Judge Weinstein wrote that "[p]rotective orders should not be granted without good reason. They restrict public access to discovery materials and depart from the 'general proposition [that] pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings.'" *Id.* at 190 (*quoting American Telephone & Telegraph Co. v. Grady,* 594 F.2d 594, 596 (7th Cir. 1978)); *see also Skibo v. City of New York,* 109 F.R.D. 58 (E.D.N.Y. 1985) (Scheindlin, M.J.). A plaintiff in a § 1983 lawsuit acts as a "private" attorney general in holding public officials accountable for their violation of individual rights and their unlawful policies and practices. *See King,* 121 F.R.D. at 195. Here, it would not serve the public interest to allow defendant to cover up records possibly establishing unlawful policies and conduct in the administration of criminal justice by public prosecutors.

Second, defendant maintains that the production of certain documents would violate

the privacy rights of third parties or would expose "confidential information." However, defendant cites no privileges recognized by federal law to refuse to provide the requested documents, which include undisclosed *Brady* material as to eyewitnesses who testified at Su's criminal trial, and hiring, training, personnel and disciplinary records of prosecutors involved in Su's prosecution, in subsequently covering up the constitutional violations that occurred at that trial, and in resisting for 11 years Su's meritorious post-trial motions and appeals. It is well established that the necessary discovery rights of a federal civil rights plaintiff take precedent over state sealing or privacy statutes. *King*, 121 F.R.D. at 186-188.

Third, defendant refuses to provide any discovery of post-conviction materials regarding the individual prosecutors involved in the Su matter, prosecutors involved in other misconduct cases, or the D.A.'s training and disciplinary policies, on the ground that such materials are not relevant. However, plaintiff's complaint alleges a coverup of *Brady* violations, and other violations of Mr. Su's Due Process rights, by employees of the Queens D.A.'s office up until his conviction was vacated by the Second Circuit nearly 12 years later, *see* Complaint, ¶ 72, and that such unlawful activity resulted from municipal policy, custom or practice that existed before plaintiff's trial through the date his conviction finally was overturned, *see id.* at ¶¶ 75-79. Thus, plaintiff's requests are plainly relevant both to establishing the unlawful behavior that caused his injuries and to establishing, under *Monell*, the existence of unlawful policies or practices resulting in his unlawful conviction[1] and its ratification and perpetuation for 11 more years.

### Defendant's Letter

The defendant's letter complains that plaintiff has failed to provide discovery

---

[1] It is well-established that subsequent actions are admissible in § 1983 actions to show prior municipal policy. *See Foley v. City of Lowell*, 948 F.2d 10, 14 (1st Cir. 1991); *Sherrod v. Berry*, 827 F.2d 195, 205 (7th Cir. 1987); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1986). Thus, evidence of such subsequent conduct is discoverable. *Martinez v. Cornell Corrections of Texas*, 229 F.R.D. 215, 219-222 (D. N.M. 2005). Courts have upheld the admission of evidence of similar misconduct to show illegal policy over lengthy time periods. *See, e.g., Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 122 (2d Cir. 1991) (15 years); *Thelma D. By and Through Delores A. V. Borad of Educ. Of City of St. Louis*, 934 F.2d 229, 933 (8th Cir. 1991) (16 years).

purportedly ordered at an informal conference on November 8, 2006. At that conference, defendant's counsel contended that plaintiff should disclose any materials from the file of Mr. Su's trial counsel, Thomas Ognibene, tending to show that either he or Mr. Su was aware at the time of the trial that the District Attorney had made an agreement with, or promise of leniency to, the People's principal eyewitness, Jeffrey Tom (the *Brady* violation that is the basis for plaintiff's civil claim). While we contended that any such communications would be protected by attorney-client or work product privilege, we agreed to search for such documents and, if they existed, to either disclose them or provide a privilege log. As we wrote to defendant in our letter of December 5, 2006, there are no such documents in anyone's file and, accordingly, there is no reason to provide a privilege log.

Defense counsel now takes the position that the court ordered plaintiff to disclose the entire files of Mr. Ognibene, appellate counsel, Joel Brenner, and subsequent counsel, Kathryne Martone. However, this is incorrect. While there was discussion of whether plaintiff should be required to provide copies of publicly-filed motion papers and appellate briefs that defendant presumably has in its file, the issue was not resolved. Nor did the court order plaintiff to provide "declarations" from Mr. Su's prior attorneys.

We have provided to defendant, in discovery, copies of all materials in our possession, custody or control from Mr. Su's murder prosecution, direct appeal, and collateral attacks, except privileged attorney-client correspondence and copies of motions, briefs, or other court documents that were on a list we provided to defendant. We also have represented that, according to Mr. Ognibene and Mr. Brenner (who is now retired), neither retains any materials from Mr. Su's case. We further have pointed out that defendant may depose any of Mr. Su's prior attorneys (consistent with attorney-client and work product privileges).

We continue to see no reason to provide publicly filed briefs and motion papers to defendant, unless there are specific documents defendant is missing. Defendant's request for obviously privileged attorney-client correspondence, or for attorney work product, is patently abusive, unduly burdensome, and improper. Unless and until defendant provides legal authority for its apparent position that it is entitled to discovery of such material notwithstanding these privileges, we see no need or obligation to prepare a privilege log. That would be a totally inappropriate invasion of privileged matters between a former criminal defendant and his attorneys, communications that are sacrosanct under the Fifth and Sixth Amendments and fundamental rules of evidence.

Honorable Cheryl L. Pollak
January 19, 2007
Page 5


### Conclusion

We respectfully request that another conference be scheduled to discuss the above discovery issues or else that a motion schedule be established to resolve them.

Respectfully submitted,

Joel B. Rudin

JBR/tp

cc:     John Graziadei, Esq.
        Assistant Corporation Counsel